[Cite as *State v. Markwell*, 2012-Ohio-3096.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2011-0056 |
| ALAN H. MARKWELL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Muskingum County Court of Common Pleas, Case No. CR2011-0129

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: July 2, 2012

APPEARANCES:

For Plaintiff-Appellee

ROBERT L. SMITH
Box 189
Zanesville, OH 43702

For Defendant-Appellant

DAVID A. SAMS
Box 40
Jefferson, OH 43162

*Gwin, P.J.*

{¶1} On August 26, 2011, a jury found appellant Alan H. Markwell ["Markwell"] guilty of one count of rape and two counts of gross sexual imposition. On September 24, 2011, Markwell returned to court for sentencing. The trial court ordered that Markwell serve a mandatory prison sentence of ten (10) years on the rape count; a prison term of eighteen (18) months on the count of gross sexual imposition; and a prison term of five (5) years on the second count of gross sexual imposition. The sentences ordered for rape and the count of gross sexual imposition involving the same victim are to be served concurrent with one another, but consecutive to the sentence ordered for the gross sexual imposition count involving a different victim, for an aggregate prison term of fifteen (15) years. Markwell was also designated as a Tier III sexual offender.

## Facts and Procedural History

{¶2} On April 25, 2011, C.T. a minor reported that she had been touched by her step-grandfather, Markwell. She told officers that Markwell had touched her on seven different occasions while she visited her grandmother between June 2008 and June 2010. C.T. reported that Markwell would come into the room where she and her sister were sleeping and push his fingers up inside her vagina. She also reported that Markwell also attempted to do the same thing to her sister, D.T., who would sleep through the incident.

{¶3} Between April 23, and April 25, 2011, C.T. engaged in a texting conversation with Markwell in which she attempted to get him to admit this conduct. In one text, Markwell wrote that he loved her and that he was making love to her.

{¶4}   Upon investigation of these allegations, officers spoke to M. H., then eight (8) years old, who reported that approximately a year earlier, Markwell had touched her on her private area.

{¶5}   Markwell was interviewed by detectives and denied the allegations. In the defense case, Markwell testified and denied the allegations. He further testified that M.H., age 8, was sexually adventurous or promiscuous in that she would try to touch adults on their privates. He further testified about the great relationship that he had with all of his wife's grandchildren. In regards to the computer messaging, he testified that his wife's grandchildren had access to the computer during the time in question and blamed them for fabricating the conversations testified to by C. T. He also testified that C. T. had a motive to lie about the charges because he had threatened to tell her parents about a secret boyfriend of hers.

Assignments of Error

{¶6}   Markwell raises six assignments of error,

{¶7}   "I. THE CONVICTION IS BASED ON INSUFFICIENT EVIDENCE AND IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶8}   "II. THE JURY INSTRUCTIONS WERE INSUFFICIENT IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶9}   "III. THE TRIAL COURT ERRED IN JOINING OFFENSES IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶10} "IV. TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶11}** "V. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶12}** "VI. APPELLANT WAS DENIED DUE PROCESS BY STRUCTURAL CUMULATIVE ERROR IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS."

ANALYSIS

I.

**{¶13}** Markwell challenges his convictions for rape and gross sexual imposition because he contends that the state failed to prove beyond a reasonable doubt that he was not married to the victims at the time of the offenses and further that the record contains insufficient proof that he penetrated the victim to support a conviction for rape. Markwell further argues that all of his convictions were against the manifest weight of the evidence.

**{¶14}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶15}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's* at 1594.

**{¶16}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶17} In the case at bar, Markwell was found guilty of one count of rape. More particularly, R.C. 2907.02 states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially

impaired because of a mental or physical condition or because of advanced age.

     \* \* \*

**{¶18}** Markwell was also found guilty of two counts of gross sexual imposition in violation of R.C. 2907.05 which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

     \* \* \*

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

**{¶19}** Markwell argues there is a complete absence of proof of non-marriage between him and the girls an essential element of each charge.

**{¶20}** In the present case, each victim testified that Markwell was her "step-grandpa." C.T. also indicated that she was sixteen (16) years old, lives with her parents and sister and brother, and attends the eleventh grade at Newark High School. Similarly, M. H. identified Charlotte Markwell as her grandma and Markwell as her

"grandpa." M. H. also indicated that she was nine (9) years old, lives with her mommy and daddy, and attends the third grade at Adamsville Elementary School.

**{¶21}** Markwell himself testified extensively concerning his family history and relationships including his first and second marriages. During this testimony, he did not claim that he was married to either of his victims.

**{¶22}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Markwell was not married to either C.T. or M.H.

**{¶23}** Markwell next argues that there was insufficient proof of penetration.

**{¶24}** In order to convict Markwell of rape, the state had to prove he engaged in sexual conduct with C.T. "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶25}** In the case at bar, C.T. testified that the Markwell penetrated her vagina to the depth of a fingernail. "Corroboration of victim testimony in rape cases is not required." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{¶26}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Markwell had committed the crime of rape. We hold, therefore, that the state met its

burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support Markwell's conviction.

**{¶27}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680(1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

> A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who [is] presumed to be fitted for it by [his or her] natural intelligence and... practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶28}** Although Markwell cross-examined the witnesses and argued that his computer was hacked, that C.T. had threatened him if he told her parents about her secret boyfriend and that each child had been sexualized in their own homes, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

{¶29} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, ¶ 21, citing *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

{¶30} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is*

*in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶31}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Markwell.

**{¶32}** Markwell's first assignment of error is overruled in its entirety.

II.

**{¶33}** In his second assignment of error, Markwell argues that the trial court failed to properly instruct the jury on the meaning of "penetration" required to sustain a conviction for rape.

**{¶34}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give

some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶35}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an erroneous jury instruction that omits an element of the offense is subject to harmless-error analysis. Id. at 15, 119 S.Ct. at 1837.

**{¶36}** On August 23, 2011, Markwell did file a written request for jury instructions in the case at bar. Of relevance, Markwell asked that the jury be instructed as follows, "Sexual Conduct means insertion however slight of any part of the body into the vaginal cavity of another." Thus, Markwell failed to request a more specific jury instruction defining "penetration."

**{¶37}** The trial court instructed the jury in relevant part, "the insertion, however slight, of any part of the body or any instrument, apparatus or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete

vaginal or anal intercourse." Thus, the trial court gave the jury the instruction that Markwell had requested at that time.

**{¶38}** On appeal, Markwell contends that the trial court was required to define "penetration" as the spreading of the vaginal lips. *E.g., State v. Melendez*, 9th Dist. No. 08CA009477, 2009-Ohio-4425; *State v. Lucas*, 2nd Dist. No. 18644, 2001-Ohio-1350.

**{¶39}** As noted in our disposition of Markwell's first assignment of error, under the circumstances of the case at bar, there is nothing in the record to show that the he was prejudiced by the failure to give the instruction that Markwell now claims the trial court should have given. C.T. testified and demonstrated for the jury that penetration did in fact occur,

Q. And I want to talk about the word penetration. Do you know what I mean when I say penetration?

[C.T.] Yes.

Q. And can you tell me what you think I mean?

A. Like pushing.

Q. Did you say pushed in?

A. Yes.

* * *

Q. Did you feel anything inside you?

A. Yes.

* * *

Q. Demonstrate what you felt.

A. It's like (Indicating) just like the tip of your nail.

Q. Your fingernail?

A. Yeah.

* * *

Q. Did you demonstrate with your fingernail it was inside?

A. Yes.

1T. at 126-127. Thus, C.H. testified that Markwell's finger penetrated her vaginal cavity. Accordingly, we find any error in the instructions to the jury was harmless beyond a reasonable doubt.

{¶40} Markwell's second assignment of error is overruled in its entirety.

III.

{¶41} In his third assignment of error, Markwell argues that the charges against him should have been severed and tried in two separate proceedings one for C.T. and the second for M.H. At the outset, we note that Markwell did not move to sever the counts for trial; nor did appellant object to the joinder of the cases for trial. Accordingly, our review is limited to finding plain error.

{¶42} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶43} "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S.

__, 130 S.Ct. 2159, 2010 WL 2025203 (May 24, 2010). (Internal quotation marks and citations omitted). *Accord, State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶28.

**{¶44}** Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9 (1995). Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14.

**{¶45}** Prejudice is not demonstrated if one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. *State v. Lott,* 51 Ohio St.3d 160, 163, 555 N.E.2d 293(1990). As long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of "other acts" evidence if it is "related to and share[s] common features with the crime in question." *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616(1994), paragraph one of the syllabus. In particular, evidence of other crimes, wrongs or acts is admissible under this rule if the evidence shows "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes, wrongs or acts is inadmissible merely to show that an accused has the propensity to commit crime. Evid.R. 404(B).

**{¶46}** When a defendant claims that he or she was prejudiced by the joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the

evidence of each crime is simple and distinct. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661(1992), citing *State v. Hamblin*, 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476(1988) and *Drew v. United States,* 331 F.2d 85(D.C.Cir. 1964). "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim*, *supra.* quoting *Drew v. United States,* 331 F.2d at 90. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed.

{¶47} In discussing the dangers associated with admitting other acts evidence in a case where the offenses included several counts of rape and gross sexual imposition, the *Schaim* court stated:

> The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. * * * This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition

statute both contain subsections that address the admissibility of evidence

of other sexual activity by either the victim or the defendant. * * *

65 Ohio St.3d at 59-60, 600 N.E.2d 661.

{¶48} From our review of the evidence, we find: 1) the acts were against family members, 2) the acts occurred when the children stayed overnight at a residence where Markwell was present and 3) all the acts occurred when the children were sleeping. *State v. Ickes*, 5th Dist. No. 1999AP080052, 2000 WL 874728 (June 13, 2000). These facts clearly indicate a "scheme, plan or system" negating any claim of accident. Id. Further, the acts were consecutive in nature, beginning with C.T. and following through to M.H. Each victim testified separately. The issues were clearly laid out for the jury, and the jury was instructed that each count and victim should be considered from its own evidence.

{¶49} Assuming, *arguendo,* that the evidence did not fit the "other acts" exception, it nevertheless fits the second prong of the *Schaim* test which requires the evidence of the crime under each indictment to be simple and distinct**.** 65 Ohio St.3d at 59. In *State v. Decker*, 88 Ohio App.3d 544, 624 N.E.2d 350(1993) the court found that the evidence was simple and distinct. The evidence achieved these characteristics in part because the crimes involved contained different victims and different witnesses, and therefore, the jury was able to segregate the facts that constituted each crime. *Id.* at 549.

{¶50} In this case, the prosecution introduced evidence of each distinct crime. Both C.T. and M.H. testified at length and in specific detail about how the abuse occurred, when it began, and how long it continued. Thus, as in *Decker,* the evidence

was simple and distinct because the facts surrounding each crime were capable of segregation.

**{¶51}** Accordingly, because Markwell was not able to demonstrate that he was prejudiced by the joinder of claims, he cannot meet the first element of the *Schaim* test. Therefore, we do not need to address the remaining elements of the test.

**{¶52}** Given the facts *sub judice,* we find no plain error affecting Markwell's substantial rights.

**{¶53}** Accordingly, Markwell's third assignment of error is denied.

IV.

**{¶54}** In his fourth assignment of error, Markwell claims that his trial counsel was ineffective for 1).failing to move of acquittal based upon the failure of the state to present evidence that Markwell was not married to either of the victims; 2).failing to request a specific jury instruction on the meaning of "penetration" as it refers to a rape charge and 3). failing to move for a severance of the charges before trial.

**{¶55}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶56}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and

*Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶57}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland* 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶58} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶59} An appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U. S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the Trier of fact would not have found him guilty.

{¶60} None of the instances raised by Markwell rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Markwell cites in support of his claim that he was denied effective assistance of counsel, we find Markwell was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶61} Because we have found no instances of error in this case, we find Markwell has not demonstrated that he was prejudiced by trial counsel's performance.

{¶62} Markwell's fourth assignment of error is overruled.

V.

{¶63} Markwell contends that the trial court erred in overruling his motion to suppress his interviews with the police.

{¶64} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, *supra*. Moreover, due weight should be given "to inferences

drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶65}** In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966). If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. *Id.,* at 476, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

**{¶66}** A custodial interrogation occurs when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way and a law enforcement officer questions that person. *Id.* "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

**{¶67}** In *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Court offered the following description of the *Miranda* custody test:

Two discrete inquiries are essential to the determination:  first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or

restraint on freedom of movement of the degree associated with a formal

arrest.

516 U.S., at 112, 116 S.Ct. 457 (internal quotation marks omitted). *Accord, Yarborough v. Alvarado*, 541U.S. 652, 653, 124 S.Ct. 2140, 158 L.Ed.2d 938(2004). The police and courts must "examine all of the circumstances surrounding the interrogation," *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293(1994), including those that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave," *Id.,* at 325, 114 S.Ct. 1526. However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough,* 541 U.S. 652, 667, 124 S.Ct.  2140, 158 L.Ed.2d 938.  *Accord, State v. Mason*, 82 Ohio St.3d 144, 153, 1998-Ohio-370, 694 N.E.2d 932(1998); *State v. Gumm* , 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253(1995).

**{¶68}** In the case at bar, the following factors weigh against a finding that Markwell was in custody. Markwell appeared at the police station voluntarily in his own vehicle accompanied by his wife. There is no suggestion in the record that Markwell was threatened if he did not appear. Detective Hill read Markwell the standard "Advice of Rights" form and explained the form to him. After Markwell told Hill that he could not read or write, Detective Hill took the time to explain Markwell's rights to him. Markwell was aware prior to agreeing to come to the station of the nature of the meeting. Markwell was free to and did in fact return home after the interview.

**{¶69}** Other facts point in the opposite direction. Markwell testified that he was not permitted to speak with his wife. Markwell was never told he was free to leave at any time during the interview.

{¶70} In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506(2003), the Ohio Supreme Court noted "[i]t is well established that at a suppression hearing, 'the evaluation of evidence and the credibility of witnesses are issues for the trier of fact.' *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. The trial court was free to find the officers' testimony more credible than appellant's. We therefore defer to the trial court's ruling regarding the weight and credibility of witnesses. *State v. Moore* (1998), 81 Ohio St.3d 22, 31, 689 N.E.2d 1." *Brown* at 55, 689 N.E.2d 1, 2003-Ohio-5059 at ¶ 15, 796 N.E.2d at 512.

{¶71} We conclude that a reasonable person in Markwell's position during the interview would have understood that he was free to walk away from the questioning by the officer and leave. *State v. Mason*, 82 Ohio St.3d 144, 153–154, 694 N.E.2d 932, 1998-Ohio-370(1998).

{¶72} Markwell argues that because he cannot read or write and because he had head injuries in the past he felt compelled to speak. Therefore, Markwell contends that his statements were involuntary.

{¶73} In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473(1986), the court held that "police over-reaching" is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854(1988).

**{¶74}** In the cause *sub judice,* Markwell does not assert that he was physically deprived or mistreated while at the police department, nor does the record reveal any type of physical deprivation. Moreover, there is no evidence that police subjected Markwell to threats or physical abuse, or deprived him of food, sleep, or medical treatment. See *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908(1989).

**{¶75}** The record is insufficient to establish that Markwell's "will was overborne" by the officers' activities in coming to his home to investigate this crime and in having Markwell come to the police station to make a statement.

**{¶76}** Based on the foregoing, we find that the trial court did not err in failing to suppress appellant's oral statements.

**{¶77}** Markwell's fifth assignment of error is overruled in its entirety.

VI.

**{¶78}** In his sixth assignment of error, Markwell claims he was denied the right to a fair trial based on cumulative error. Specifically, Markwell alleges that the errors outlined in his previous assignments of error amount to cumulative error requiring reversal.

**{¶79}** In *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel,* 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103.

**{¶80}** Here, Markwell cites the doctrine of cumulative error, lists or incorporates the previous assignments of error, and gives no analysis or explanation as to why or

how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp.*

**{¶81}** Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter,* 5th Dist. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard,* 104 Ohio St.3d 54, 89-90, 2004-Ohio-6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶82}** As this case does not involve multiple instances of error, Markwell's sixth assignment of error is overruled.

Conclusion

**{¶83}** Markwell's first, second, third, fourth, fifth and sixth assignments of error are overruled in their entirety and the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.

By Gwin, P.J., and

Wise, J., concur;

Hoffman, J., concurs

separately

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


WSG:clw 0607

*Hoffman, J., concurring*

{¶84} I concur in the majority's analysis and disposition of Appellant's Assignments of Error I, II, IV, V and VI.

{¶85} I further concur in the majority's disposition of Appellant's Assignment of Error III. The majority finds the facts clearly indicate a scheme, plan or system negating any claim of accident. I interpret this to mean it finds the evidence admissible under Evid.R. 404(B). However, the Appellant herein denied the charges, he did not claim accident. I find the evidence is not admissible under the rule. For a similar analysis see this Court's opinion in *State v. Slaven*, 2010-Ohio-6400. And we noted in *Slaven*, the similarities between the sexual abuses committed against each victim and the inflammatory nature of the offenses elevate the risk of prejudice.

{¶86} While the evidence as it pertains to each victim may have been direct, I am not convinced it was simple nor distinct. The testimony of each victim as to Appellant's conduct was similar in nature. The fact-finder would have had a difficult time looking at the evidence supporting each offense as simple and distinct because the temptation would be great to respond to the evidence emotionally rather than rationally. See *State v. Frazier*, 2004-Ohio-1536, for a similar analysis.

{¶87} Despite the above, I find the overall weight of the evidence in this case substantial and more than sufficient to overcome any prejudice Appellant may have suffered as a result of the joinder.

_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Markwell*, 2012-Ohio-3096.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ALAN H. MARKWELL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. CT2011-0056 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE