OPINION *Page 2 
{¶ 1} On February 20, 2006, the Stark County Grand Jury indicted appellant, Steven Broucker, on three counts of assault of a peace officer in violation of R.C. 2903.13, one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16, and three counts of resisting arrest in violation of R.C. 2921.33. Said charges arose from a domestic dispute involving appellant and his mother, Helen Walton.
 {¶ 2} A jury trial commenced on October 3, 2007. At the conclusion of the case, the three resisting arrest counts were merged into one count. The jury found appellant guilty of all the charges. By judgment entry filed October 12, 2007, the trial court sentenced appellant to an aggregate term of eighteen months in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 II {¶ 5} "THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."
 III {¶ 6} "THE TRIAL COURT COMMITTED ERROR BY IMPROPERLY CHARGING THE JURY." *Page 3 
 I {¶ 7} Appellant claims his convictions were against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 8} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 9} Appellant was convicted of three counts of assault of a peace officer in violation of R.C. 2903.13(A) and (C)(3) which state the following:
 {¶ 10} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. *Page 4 
 {¶ 11} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
 {¶ 12} "(3) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 13} Appellant was also convicted of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B) which states, "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." In addition, appellant was convicted of resisting arrest in violation of R.C. 2921.33(B) which states, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer."
 {¶ 14} Appellant argues the evidence does not support the findings that he knowingly caused or attempted to cause physical harm to the police officers, that he knowingly transported or had a loaded firearm in the hatchback of his motor vehicle, and that he resisted a lawful arrest.
 ASSAULT OF PEACE OFFICERS {¶ 15} Appellant argues he did not knowingly assault Stark County Sheriff's Deputies Keith Evanoff and Jeremy Novelli, and Sergeant Eric Weisburn. It is undisputed the deputies and the sergeant were on duty and were responding to a "911" *Page 5 
domestic dispute call involving a weapon. T. at 101. Shannon Stephens, appellant's cousin, had called the police after observing appellant and his mother, Helen Walton, arguing over a shotgun. T. at 207. Ms. Stephens knew appellant had been drinking. T. at 208. Appellant placed the shotgun in the back of his hatchback vehicle, and he and his mother drove off with Ms. Walton driving. T. at 219-220.
 {¶ 16} Deputy Evanoff observed the vehicle matching the description he had been given, and effectuated a felony stop in order to ensure his safety and the safety of others. T. at 104. In the initial moments after the stop, appellant was confrontational, aggressive, belligerent, and was screaming vulgarities. T. at 107, 114. Sergeant Weisburn arrived on the scene and tried to de-escalate the situation. T. at 260. Appellant yelled, "fuck this shit," and jumped back into the rear seat of his vehicle. T. at 262. Sergeant Weisburn believed appellant was "going for a gun and that any second here we're going to have to shoot." T. at 263. Appellant then came out of the vehicle without a firearm, and Sergeant Weisburn holstered his weapon and decided to approach appellant in a non-aggressive manner. T. at 263, 280. At some point, Deputy Novelli arrived as backup. T. at 153. Appellant refused to cooperate, so Sergeant Weisburn decided "to take him down to the ground." T. at 112, 283. Appellant wrapped his arms around the window frame of the vehicle "in kind of like a cobra clutch." T. at 115, 163, 283. He then kicked out at Sergeant Weisburn and the two deputies who by then had joined in the take down. T. at 116, 164, 284-286. Each deputy sustained hits from appellant's kicking and grabbing which resulted in minor injuries. T. at 118, 169-170, 291. *Page 6 
 {¶ 17} Appellant was aware his kicking would cause injury as evidenced by his belligerent and aggressive behavior. Upon review, we find sufficient evidence to support the jury's verdict on the assault charges.
 IMPROPER HANDLING OF A FIREARM {¶ 18} It is clear from the testimony regarding the loaded firearm (shotgun) that it was in appellant's possession. Ms. Walton, and her fianc É e, Gary Saunier, testified Mr. Saunier had unloaded the shotgun while it was in their home. T. 193, 341-342. Ms. Walton then gave the shotgun and shells to appellant, and he placed them in a black duffle bag in the hatchback of his vehicle. T. at 344-345. Sergeant Weisburn testified he retrieved a shotgun from the back of appellant's vehicle, and it had five rounds in the holding chamber and one was in the barrel. T. at 267-268, 270; State's Exhibit 1. The shotgun was not in a duffle bag, "[i]t was just laying there." T. at 274.
 {¶ 19} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. Clearly, the jury chose to believe Sergeant Weisburn as to the condition of the shotgun. Mr. Saunier was evasive in his answers and had selective memory, and Ms. Walton was part of the fray. On two occasions, appellant jumped back into the rear seat of his vehicle during the stop. T. at 262-263. It is a short leap to believe this was when the shotgun could have been loaded. Upon review, we find sufficient evidence to support the jury's verdict on the weapon charge.
 RESISTING ARREST {¶ 20} Appellant does not argue the fact that he resisted arrest as evidenced by his actions on the videotape. State's Exhibit 6. Appellant fought with the deputies while *Page 7 
he was being handcuffed and then placed in belly chains and leg irons because he had slipped his handcuffs, and fought "all the way back to the jail." T. at 117-118, 164, 284-289. Rather, appellant argues his arrest was unlawful.
 {¶ 21} Probable cause to arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v.Timson (1974), 38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections. 3.12-3.19.
 {¶ 22} We find appellant's actions belie the claim that the arrest was unlawful. The issue was whether there was probable cause to believe a crime was being committed. The deputies were told of a domestic dispute involving a weapon, and appellant had threatened to harm anyone who stopped him. T. at 101-102, 150, 258-259. Mr. Saunier and Ms. Stephens both gave written statements regarding the threats made by appellant, but recanted them or became evasive during their sworn testimony. T. at 194-195, 203, 204-214. Because the situation involved a domestic dispute, Deputy Evanoff did not know "if the person that was in the car with him [appellant] went with him by choice or was forced to go with him." T. at 104. Ms. Stephens testified appellant had been drinking immediately prior to the incident. T. at 208.
 {¶ 23} We find the deputies' knowledge about the domestic dispute created reasonable, reliable suspicion that a crime was being committed. Once stopped, *Page 8 
appellant's attitude, behavior, and belligerence led to his arrest. Appellant refused to listen or talk to Sergeant Weisburn, and refused to cooperate. He used vulgarities, and jumped back into his vehicle where the shotgun was located. At this point, the deputies could not turn away and wish appellant and his mother "a good day." Even if all the information on the initial dispatch was wrong, the deputies had to react as they did. Once appellant jumped back into his vehicle where the shotgun was located, probable cause had been fulfilled. Upon review, we find appellant's arrest was lawful.
 {¶ 24} Assignment of Error I is denied.
 II {¶ 25} Appellant claims he was denied the effective assistance of trial counsel. We disagree.
 {¶ 26} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 27} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 28} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Page 9 
 {¶ 29} Appellant argues his trial counsel should have made a pretrial motion to exclude the admission of the videotape depicting his arrest and restraint by the deputies.
 {¶ 30} Defense counsel objected to the playing of the videotape depicting appellant's ride to jail post-arrest, arguing it was "highly inflammatory and prejudicial." T. at 155, 156-157. The state argued the videotape shows appellant "fighting with the officers and resisting arrest. And the tape goes to the Defendant's state of mind at the time he's committing the crimes for which he's charged in the indictment." T. at 155-156. The state also argued some of these issues "may have potentially been ripe for a motion to suppress or a motion in limine." T. at 157. The trial court suggested "at least in the future, if you bring something like this to my attention, I will have viewed it in advance of trial." Id. The trial court also acknowledged appellant "has been represented by a variety of lawyers." T. at 159. The trial court decided to run the videotape until the drive to the jail, and then make a determination. Id. Thereafter, the trial court permitted the playing of the complained of part of the videotape, stating, "it's the best evidence." T. at 167.
 {¶ 31} Although the criminal rules provide a mechanism so that surprise issues do not arise during trial, a motion in limine is always subject to re-determination during the course of a trial. Upon review, we find defense counsel was not deficient in his handling of the issue.
 {¶ 32} Assignment of Error II is denied. *Page 10 
 III {¶ 33} Appellant claims the trial court erred in not defining "lawful arrest" in the resisting arrest jury charge. We disagree.
 {¶ 34} No objection was made to the jury instructions given by the trial court. Crim. R. 30(A) states the following:
 {¶ 35} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 36} We must review this issue under the plain error doctrine of Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In State v. Cooperrider (1983), 4 Ohio St.3d 226, 227, the Supreme Court of Ohio discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction as follows:
 {¶ 37} "* * * an erroneous jury instruction `does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.' State v.Long (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804. Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice."
 {¶ 38} As conceded by the state, the trial court omitted the word "lawful" in giving the jury charge. When we examine this omission under the plain error standard, we find, as noted in Assignment of Error I, there was sufficient evidence of appellant's combativeness during the stop as well as his assault of the deputies while they were *Page 11 
attempting to control him. We find the trial court's omission did not rise to the level of plain error.
 {¶ 39} Assignment of Error III is denied.
 {¶ 40} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, P.J. Edwards, J. and Delaney, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1