[Cite as *State v. Scott*, 2012-Ohio-3482.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 11CA80 |
| RANDY L. SCOTT | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court of
                                  Common Pleas, Case No. 2010 CR 0313H

JUDGMENT:                         AFFIRMED IN PART, REVERSED IN
                                  PART, AND REMANDED

DATE OF JUDGMENT ENTRY:           July 23, 2012

APPEARANCES:

For Appellant:                          For Appellee:

WILLIAM T. CRAMER                       JAMES J. MAYER, JR.
470 Olde Worthington Rd., Ste. 200      RICHLAND COUNTY PROSECUTOR
Westerville, OH 43082

                                        DANIEL BENOIT
                                        38 South Park St.
                                        Mansfield, OH 44902

*Delaney, J.*

{¶1} Appellant Randy L. Scott appeals from the August 26, 2011 judgment entry of the Richland County Court of Appeals convicting him of four counts of rape, four counts of sexual battery, four counts of gross sexual imposition, and one count of kidnapping with a sexual motivation, and sentencing him to an aggregate prison term of 26 and a half years. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶1} The victim in this case is P.E., the minor daughter of appellant. The victim was born in 1994. K.S. is appellant's wife and the victim's stepmother. Appellant was the custodial parent of the victim, not having married the victim's mother. Appellant and K.S. both worked as corrections officers in Richland County.

{¶2} The following facts are adduced from the record of appellant's trial.

{¶3} This case arose on May 5, 2010, when K.S. called 911 and reported to the Richland County Sheriff's Department that appellant had raped the victim.

### The History of Abuse

{¶4} At trial, the victim testified to repeated acts of sexual abuse by appellant that began when she was 11 years old. The incidents occurred at the family home in Richland County. The victim stated she didn't tell anyone because she was afraid appellant would lose his job and go to jail. She also didn't want to break up her family.

{¶5} The victim further testified she was afraid of appellant, in part because he was bigger than she was, but also because she had been led to believe that appellant had killed a younger sibling.

{¶6}   The victim further testified didn't tell anyone about the rapes because she didn't want appellant to be arrested and she always considered herself to be "daddy's girl."

{¶7}   The pattern of sexual assaults continued, increasing in frequency as the victim got older, to the point that she was raped as often as once a week.  She would say no but the assaults continued.   The victim tried to avoid appellant.   Her stepmother was never home when the assaults occurred.

{¶8}   The assaults occurred in appellant's bedroom, the victim's bedroom, and the laundry room in the basement.  The victim was able to time the general history of the abuse based upon where her family was living at the time.  They lived in two different houses in Mansfield.

*Indicted Offenses:  April 2010*

{¶9}   Throughout the month of April, 2010, the rapes occurred once or twice a week.  The incidents occurred in the victim's bedroom.

*Indicted Offenses:  May 3, 2010*

{¶10} The final act of rape was clear in the victim's mind because she disclosed it to her cousin shortly thereafter and appellant was arrested two days later.

{¶11} On the evening of Monday, May 3, 2010, K.S. was not home from work yet. The victim was in her bedroom after showering and was raped by appellant. He ejaculated on her stomach.  The victim thereafter wiped herself off with a pink towel.  She then placed the pink towel in her dirty-clothes basket in her closet.  The victim called and texted her cousin to tell him she had been raped again.

{¶12} Most of the adult family members closest to the victim, whether by relationship or proximity, claimed to have no idea the abuse was taking place. The victim did reach out, however, to her friends and younger family members, who testified to the disclosures at trial. Ultimately, on May 5, 2010, the incidents were disclosed to K.S.

{¶13} K.S. then called 911 to report the rapes. A Richland County Sheriff's deputy came to the house and learned the basic details of the allegations from K.S. The deputy told K.S. to take the victim to the hospital for a rape exam, and contacted detectives and children's services.

*The SANE Exam*

{¶14} At MedCentral Hospital, the victim met with sexual assault nurse examiner (SANE) Tammy Lawhorn. Lawhorn's purpose was to perform a head-to-toe examination, record the history presented, collect evidence, diagnose and treat medical conditions, and forward her findings.

{¶15} K.S. brought the victim to the hospital on May 5, 2010 at 4:55 p.m. A representative from children's services was also present.

{¶16} Lawhorn first obtained a history from her, who told her she was sitting on her bed when her father came into the room and told her to stand up. She said no, and he turned the lights off. He pinned her to the floor, licked her vagina, and put his penis in her vagina. His sperm went all over her stomach, and then he went back downstairs to watch the Cavs game. The victim further stated this was not the first rape; the abuse started when she was 11 and had occurred over 30 times. She never

told anyone because she was scared; and she had a baby sister who was killed by appellant.

{¶17} Lawhorn testified that an exam is "acute" if the sexual assault occurred within the previous 72 hours. She performed a genital exam with a colposcope, which magnifies injuries, and noted two "old tears" to the patient's hymen, multiple blisters on the lips of the vagina, and a bruised cervix. Although Lawhorn agreed that tears to the hymen and vaginal blisters could be caused by a number of things other than sexual assault, the bruise to the cervix was caused by blunt force trauma. These injuries were consistent with the history related by the victim.

{¶18} Lawhorn's exam collected key pieces of evidence including the underwear the victim wore to the hospital and a rape kit. Lawhorn notified a deputy that the victim had cleaned herself after the assault with the pink towel, and the deputy sent K.S. back to the house to retrieve the towel. K.S. later testified she found the towel in the victim's dirty-clothes basket, and picked it up by placing a plastic grocery bag over her hand. She placed the towel into a separate plastic bag and turned it over to investigators.

*The Physical Evidence*

{¶1} Investigators executed a search warrant upon appellant's residence and collected a number of pieces of physical evidence, including cuttings from carpet and P.'s mattress. Ultimately investigators submitted physical evidence most likely to yield DNA results, including the rape kit from the hospital, a DNA standard from appellant, the pink towel found in the victim's dirty-clothes basket, and a mattress cutting. These items were submitted to B.C.I. for analysis.

{¶2} Forensic analysts confirmed the presence of semen on the crotch of the victim's underwear and on the pink towel. On the pink towel, the semen appeared in ten different spots. Two DNA profiles were detected in the cutting from the crotch of the victim's underwear: those of the victim and appellant. One DNA profile was extracted from the semen detected on the pink towel: appellant's.

*The Death of the Victim's Sibling*

{¶3} One issue at trial was why the victim didn't tell anyone, which was explained in part by her fear of appellant. She testified that appellant never made any express threat against her, and yet she never fought back or forcefully resisted. Although she thought about "kicking him in the balls," she never did so. She thought appellant would physically hurt her if she told anyone.

{¶4} The victim testified that her fear of appellant was based in part upon her belief that he had killed her baby sister. The victim testified she had asked appellant how the sibling had died and he told her on different occasions that she was sick and that she was murdered. This topic was explored further with Detective Patrice Smith on re-cross by the defense. Det. Smith testified she was aware the victim had been told appellant killed her sister. Smith stated summarily, in response to defense questioning, that the allegation was investigated and nothing came of it. Upon redirect, when asked how the child died, Smith replied she had head trauma and a lacerated liver from being punched in the abdomen.

{¶5} When appellant testified, even more details of the child's death were elicited by the defense. Appellant stated the child was 11 months old when she died. In the 24 hours leading up to her death, the child was with, at different times, her

mother, appellant, and appellant's mother. Appellant's mother called him to say the child was not responding and they were taking her to the hospital. Upon his arrival, she had already passed away. Appellant testified that two weeks later he learned the death was being investigated as a homicide.

{¶6} Upon cross-examination, appellant stated the child was murdered but not by him. Prior to her death, the child had a history of unexplained bruises and injuries.

*Appellant's Testimony at Trial*

{¶7} Appellant testified on his own behalf at trial. He denied any type of sexual contact or conduct with the victim. He had no explanation why the victim would make up the allegations. He related his version of the events of May 3, 2010.

{¶8} Appellant had disciplined the victim earlier in the day by taking her cell phone away because he learned she was sent to in-school suspension for texting at school.

{¶9} That evening, K.S. was at work and Appellant had been watching a basketball game but went upstairs. Appellant heard the shower running and reached into the room to jokingly turn the light on and off while his daughter was in the shower. Appellant then went into his bedroom to turn on the basketball game on the television there. He heard his daughter come out of the bathroom, and go into her bedroom and close the door.

{¶10} A few minutes later, the telephone rang and when he answered it, no one was there, but the caller ID indicated his daughter's friend had called. He took the telephone to her room, knocked on her door, and she stuck her head out. Appellant

told her a friend had called and his daughter took the phone. After then took a shower, and he returned to his bedroom and remained there for the rest of the night.

{¶11} Appellant further testified that he has a problem with "longevity during sexual intercourse" and therefore masturbates if he expects to later be intimate with his wife. He claimed he masturbated and cleaned up with the pink towel, which he placed in his own dirty-clothes basket.

{¶12} Appellant had no explanation for how his semen turned up in the crotch of his daughter's underwear, or how the pink towel containing his semen wound up in his daughter's clothes basket.

*Indictment, Jury Trial, Conviction, and Sentence*

{¶13} Appellant was charged by indictment with three counts of rape occurring between April 5, 2010 and May 2, 2010 [R.C. 2907.02(A)(2), felonies of the first degree]; one count of rape occurring on May 3, 2010 [R.C. 2907.02(A)(2), a felony of the first degree]; three counts of sexual battery occurring between April 5, 2010 and May 2, 2010 [R.C. 2907.03(A)(5), felonies of the third degree]; one count of sexual battery occurring on May 3, 2010 [R.C. 2907.03(A)(5), a felony of the third degree]; three counts of gross sexual imposition occurring between April 5, 2010 and May 2, 2010 [R.C. 2907.05(A)(1), felonies of the fourth degree]; one count of gross sexual imposition occurring on May 3, 2010 [R.C. 2907.05(A)(1), a felony of the fourth degree]; and one count of kidnapping with a sexual motivation specification occurring on May 3, 2010 [R.C. 2905.01(A)(4) and 2941.147, a felony of the first degree].

{¶14} Appellant entered pleas of not guilty and the case proceeded to jury trial. Appellant moved for a judgment of acquittal at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled.

{¶15} The jury found appellant guilty as charged, and the trial court sentenced him to an aggregate prison term of twenty-six and a half years.

{¶16} Appellant now appeals from the judgment entry of his convictions and sentence.

{¶17} Appellant raises six Assignments of Error:

{¶18} "I.   APPELLANT WAS DENIED HIS STATE AND FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE JURY WAS EXPOSED TO HIGHLY PREJUDICIAL CHARACTER EVIDENCE IN VIOLATION OF EVID.R. 403(A) AND 404(B)."

{¶19} "II.   APPELLANT WAS DENIED HIS STATE AND FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE PROSECUTION WAS IMPROPERLY PERMITTED TO BOLSTER THE VICTIM'S CREDIBILITY WITH EVIDENCE OF PRIOR CONSISTENT STATEMENTS."

{¶20} "III.   APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO NUMEROUS INADMISSIBLE PIECES OF EVIDENCE."

{¶21} "IV. APPELLANTS (*sic*) STATE AND FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL COURT INSTRUCTED THE JURY TO PAY PARTICULAR ATTENTION TO APPELLANT'S INTEREST IN THE

OUTCOME OF THE CASE AND RESULTING BIAS WHEN INSTRUCTING THE JURY ON HOW TO ASSESS WITNESS CREDIBILITY."

{¶22} "V.    APPELLANT WAS DEPRIVED OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AS A RESULT OF THE CUMULATIVE IMPACT OF THE ERRORS."

{¶23} "VI.    APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND PROTECTION FROM DOUBLE JEOPARDY WHEN THE TRIAL COURT FAILED TO PROPERLY MERGE SEVERAL COUNTS INVOLVING ALLIED OFFENSES IN VIOLATION OF R.C. 2941.25."

I.

{¶24} In his first assignment of error, appellant claims the trial court erred in admitting inadmissible character evidence in the form of allegations of repeated abuse over a period of years and the allegation appellant killed the victim's baby sister.  We disagree.

{¶25}  Prior to trial appellant moved to exclude evidence of ongoing abuse from the time his daughter was 11 years old, and evidence of the homicide allegation involving her younger sibling.  The state argued the evidence was admissible to show the state of mind of the victim, including the delay in reporting the abuse.  The trial court agreed, and ruled the evidence was admissible subject to a limiting instruction. Appellant renewed objections to the evidence at trial, and the trial court did instruct the jury at the end of the trial the evidence was not admitted to show the character of appellant but rather to state of mind of the victim.

{¶26} The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶27} Generally, the prosecution in a criminal trial may not present evidence that a defendant has committed other crimes or bad acts independent of the crime for which he is being tried to establish the defendant acted in conformity with his bad character. Evid.R. 404(B); *State v. Hirsch*, 129 Ohio App.3d 294, 306, 717 N.E.2d 789 (1st Dist.1998). Evid.R. 404(B) and R.C. 2945.59 provide that other-acts evidence is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶28} In this case, however, the challenged evidence does not fit squarely within the 404(B) exceptions, and appellee did not argue it was offered for any of those purposes. Instead, the evidence was offered to show the victim's state of mind; specifically, why she didn't tell anyone about the abuse and why she was in fear of appellant. "Other-acts evidence may be admitted for reasons other than those listed in R.C. 2945.59 or Evid.R. 404(B), provided that the evidence is not offered solely to show the accused's propensity to commit the crime in question." *State v. Wright*, 4th Dist. No. 00CA39, 2001-Ohio-2473, appeal not allowed, 101 Ohio St.3d 1490, 2004-Ohio-1293, 805 N.E.2d 540.

{¶29} Appellant was charged with multiple counts of forcible rape against his daughter. We find, consistent with holdings of other courts in similar cases, the

challenged other-acts evidence helped demonstrate appellant purposely compelled his daughter to submit by force or threat of force.  See *Wright*, supra.  In a case involving a minor child and a parent, testimony which tends to establish psychological force is not improper propensity evidence, but instead tends to show an element of the crime, force, which is a material issue at trial.  See *Wright,* supra, citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988) and *State v. Schaim*, 65 Ohio St.3d 51, 1992-Ohio-31, 600 N.E.2d 661.

{¶30} This holding is consistent with our holding in *State v. Doup*, 5th Dist. No. 02CA000008, 2002-Ohio-6981, appeal not allowed, 98 Ohio St.3d 1513, 2003-Ohio-1572, 786 N.E.2d 63, in which we found other-acts evidence "explained the victim's acquiescence to the sexual abuse" and "explained the state of the victim's mind and the environment wherein the sexual assaults occurred."  *Id.*, at ¶ 48.

{¶31} The trial court did give a limiting instruction.  As we have frequently noted, "[a] presumption always exists that the jury has followed the instructions given to it by the trial court."  *State v. Bleigh*, 5th Dist. No. 09-CAA-03-0031, 2010-Ohio-1182, ¶ 134, citing *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990) at paragraph four of the syllabus.  Appellant points to no evidence in the record that the jury failed to follow the trial court's limiting instruction.

{¶32} Accordingly, we find the trial court did not abuse its discretion in admitting the evidence of the unexplained death of the victim's sibling and the history of sexual abuse of the victim.

{¶33} We overrule appellant's first assignment of error.

II.

{¶34} In his second assignment of error, appellant argues the state should not have been permitted to "bolster" the victim's credibility with evidence of her disclosures to friends and family. We disagree.

{¶35} Prior to trial, a hearing was held on a number of motions filed by the parties. Appellant moved to exclude evidence in the form of statements made by the victim about the abuse to friends and family members. At the hearing, the state asserted that the statements would not be offered for the truth of the matter asserted but instead to show the effect of the statement on the listener: "In other words, this child over the years told various people who were not in a position of authority, like a 15-year-old brother, et cetera, people of that nature, about the abuse that was going on, and it's offered to show the effect on the listener, because every time she told one of these people about it she made them promise not to tell anybody. The issue is, the matter was not reported until May 5, 2010. And these witnesses, I understand, cannot go into detail about what she said, but I think they can testify they were informed by her that she was being sexually abused, they were asked not to say anything about it, and they didn't tell anybody about it. * * *." The trial court pointed out that the evidence may be inadmissible if it was hearsay, but that if the defense impugned the victim's credibility, the statements would become admissible. Ultimately the trial court determined the ruling would have to be made in the course of the trial.

{¶36} During the state's case, younger family relatives and friends testified the victim told them about ongoing sexual abuse by her father since she was 11 years old.

{¶37} Appellant argues the testimony of the witnesses is impermissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). The Rule further provides that some statements are not hearsay. Evid.R. 801(D)(1)(b) states: "A statement is not hearsay if * * * the declarant testifies at the trial * * * and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive."

{¶38} Appellant's opening statement at trial presented the theory that the victim didn't want to live with appellant anymore because she didn't want to move to a new house, didn't get along with her step-mother, was curious about living with her mother who was a more permissive parent than appellant. We have previously found that such implications during opening statements are sufficient to allow the state's use of Evid.R. 801(D)(1)(b). *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008-Ohio-6260, ¶65, appeal not allowed, 121 Ohio St.3d 1442, 2009-Ohio-1638, 903 N.E.2d 1224. See also, *State v. Abdussatar*, 8th Dist. No. 86406, 2006-Ohio-803, *State v. Johnson*, 2nd Dist. No. 15253 (Apr. 26, 1996), *State v. Hoskins*, 2nd Dist. No. 94-CA-42 (Jun. 28, 1995).

{¶39} We therefore find the statements made to the victim's friends and family members, by the victim, are not impermissible hearsay and the trial court did not abuse its discretion in admitting them.

{¶40} For the foregoing reasons, we therefore overrule appellant's second assignment of error.

III.

{¶41} In his third assignment of error, appellant argues he received ineffective assistance of trial counsel because counsel failed to object to three instances of improper character evidence. We disagree.

{¶42} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶43} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶44} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶45} First, we note the record is replete with objections raised by appellant's trial counsel to various evidence and arguments presented by the state. Appellant points, though, to three specific comments by witnesses to which defense trial counsel raised no objection: the victim's mother's references to physical abuse by appellant and his "nasty dream" about her, and a comment appellant made to the victim's friend that he would be "all over her" if he was her age.

{¶46} In the context of the entire trial, we find defense trial counsel was not deficient in failing to object to these statements. While these remarks may have been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland*, supra, 466 U.S. at 681.

{¶47} Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008-Ohio-6260, ¶ 72, appeal not allowed, 123 Ohio St.3d 1474, 2009-Ohio-5704, 915 N.E.2d 1255, citing *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999).

{¶48} In short, we find no reasonable probability the outcome of the trial would have been different had such objections been raised. See, *State v. Graber*, 5th Dist. No. 2002CA00014, 2003-Ohio-137, ¶ 154, appeal not allowed, 101 Ohio St.3d 1466, 2004-Ohio-819, 804 N.E.2d 40.

{¶49} Appellant's third assignment of error is therefore overruled.

IV.

{¶50} In his fourth assignment of error, appellant asserts the trial court erred in instructing the jury to pay particular attention to appellant's interest in the outcome of the case and any bias that interest may engender.

{¶51} No objection was raised to the jury instructions given by the trial court. Crim.R. 30(A) states: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

{¶52} We therefore review this issue for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted).

{¶53} The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The Ohio Supreme Court

has noted "* * * an erroneous jury instruction 'does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983), citing *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶54} We have carefully reviewed the record of this case, and find the evidence of appellant's guilt to be substantial. We find the trial court's instruction did not rise to level of plain error because the outcome of the trial would not have been otherwise absent the instruction. See, *State v. Broucker*, 5th Dist. No. 2007CA00315, 2008-Ohio-2946, ¶ 38.

{¶55} Appellant's fourth assignment of error is therefore overruled.

V.

{¶56} In his fifth assignment of error, appellant claims cumulative errors in his trial deprived him of a fair trial. We disagree.

{¶57} In *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), the Ohio Supreme Court held pursuant to the cumulative error doctrine "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."

{¶58} In the instant case, we do not find multiple instances of harmless error triggering the cumulative error doctrine, and appellant's fifth assignment of error is therefore overruled.

VI.

{¶59} In his sixth and final assignment of error, appellant asserts the trial court failed to properly merge several counts involving allied offenses in sentencing appellant. We agree.

{¶60} Appellant was convicted of four separate incidents of rape, sexual battery, and gross sexual imposition: three of these incidents occurred in April, 2010, and the fourth occurred on May 3, 2010. The May 3 incident included an act of kidnapping, which the state summarized as appellant's act of holding P. down by force. At sentencing, the parties agreed that some counts merged and asked the trial court for concurrent sentencing (T. 953-954, 957-958). Specifically, the state agreed that the sexual battery offenses of Counts Five, Six, and Seven merged with the rape offenses of Counts One, Two, and Three, the April offenses. The state argued a separate animus existed for the sexual battery offense in Count Eight, the May 3 incident. The trial court agreed (T. 962). The trial court also found a separate animus existed as to Count 12, the gross sexual imposition offense of May 3.

{¶61} The trial court noted that the 10-year sentence for the offense of kidnapping "should run concurrent" on the basis of *State v. Logan*, 60 Ohio St.2d 126 (1979) because the restraint and movement of the victim had no significance apart from facilitating the rape (T. 963). The record of the sentencing hearing does not indicate the trial court made any other findings regarding allied offenses or merger beyond references to separate animuses of Counts Eight and Twelve.

{¶62} The trial court sentenced appellant on all counts. The resulting sentencing entry also indicates that the terms for Counts One [rape, 10 years], Four

[rape, 10 years], Eight [sexual battery, 5 years], and Twelve [gross sexual imposition, 18 months] are consecutive to each other, and the remaining counts are concurrent. Among the remaining counts is Count 13, kidnapping, on which the trial court imposed a concurrent sentence of 10 years.

{¶63} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

With *State v. Johnson*, the Ohio Supreme Court attempted to clarify whether offenses are subject to merger.  128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.  First, the court must determine whether the offenses are allied and of similar import.  In so doing, the pertinent question is 'whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other." * * *.  Second, "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'"  * * *.  If both questions are answered in the

affirmative, then the offenses are allied offenses of similar import and will be merged. *Johnson*, at ¶ 50, internal citations omitted.

{¶64} The crimes of rape and sexual battery are generally allied offenses of similar import and should have been merged, as appellee concedes in terms of Counts One, Two, and Three [the April rape counts] and Counts Five, Six, and Seven [the April sexual battery counts]. Instead, appellant received concurrent sentences. Imposing a concurrent sentence is not the equivalent of merging allied offenses. *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17.

{¶65} Appellee urges us to review the merger issues as plain error, stating "[b]ecause the trial court believed that running the sentences concurrently was sufficient to merge them as allied offenses, [appellant] would be serving the same consecutive sentences even if the allied offenses had not been sentenced." Appellant urges, too, to avoid remanding the case and to simply resentence him "to reflect an appropriate merger." Unfortunately it is not clear from the record that the trial court found any of the counts to be allied offenses which merged for sentencing. The only specific reference to merger occurred with respect to Count 13, kidnapping, for which the trial court imposed a concurrent sentence.

{¶66} Although the parties urge us to avoid remand and to correct the sentencing errors pursuant to Section 3(B)(2), Article IV of the Ohio Constitution and R.C. 2953.07, we are required to follow the instruction of the Ohio Supreme Court in *Whitfield*: "If, upon appeal, a court of appeals finds reversible error in the imposition of multiple punishments for allied offenses, the court must reverse the judgment of conviction and remand for a new sentencing hearing at which the state must elect

which allied offense it will pursue against the defendant." 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25; see also *State v. Bleigh*, 5th Dist. No. 09-CAA-03-0031, 2010-Ohio-1182, ¶ 154-155.

{¶67} In *State v. Damron*, the Ohio Supreme Court addressed a sentencing error very much like the one in this case:

> When a defendant has been found guilty of offenses that are allied offenses, R.C. 2941.25 prohibits the imposition of multiple sentences. [*State v.*] *Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 12. Therefore, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing. *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149m at ¶ 41-43. In this case, the sentencing court found Damron guilty of both offenses and sentenced him on both. The imposition of concurrent sentences is not the equivalent of merging allied offenses. As we explained in *Whitfield*, for purposes of R.C. 2941.25, a "conviction" is the combination of a guilt determination and a sentence or penalty. *Whitfield* at ¶ 12. * * *.
>
> *State v. Damron*, supra, 2011-Ohio-2268, ¶ 17.

{¶68} As the record presently stands, appellant has been convicted and sentenced on all 13 charged offenses, despite the parties' acknowledgment, and the trial court's apparent agreement, that some of those are allied offenses of similar import which should merge. We therefore find the trial court erred in sentencing appellant on all counts. Accordingly, appellant's sixth assignment of error is sustained.

{¶69} For the reasons stated in the foregoing opinion, the judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part, and remanded for the trial court to review the issue of merger.

By: Delaney, P.J.

and Wise, J. concur.

Hoffman, J. concurs separately

_____

HON. PATRICIA A. DELANEY

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE

PAD:kgb

*Hoffman, J., concurring*

{¶70} I concur in the majority's analysis and disposition of Appellant's Assignments of Error II, IV, V, and VI.

{¶71} I further concur in the majority's disposition of Appellant's Assignment of Error I. Unlike the majority, I would find the trial court erred in permitting allegations of the repeated sexual abuse of the victim over a period of years outside the time parameters of the Indictment. The majority conceded the challenged evidence does not fit squarely within the 404(B) exceptions. The victim's state of mind is not one of the listed exceptions. While the victim's belief Appellant may have killed her sister was arguably permissible to explain the victim's failure to timely report the abuse, I find evidence of other incidents of abuse violates Evid.R. 404(B). The trial court is vested with discretion in determining the admissibility of evidence, so long as such discretion is exercised in line with the rules of procedure and evidence. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991).

{¶72} Despite finding error in the admission of the other acts evidence, I concur in the majority's decision to overrule this assignment of error in light of the trial court's cautionary instruction and the fact the weight of the other admissible evidence renders the error harmless.

{¶73} Finally, I also concur in the majority's disposition of Appellant's Assignment of Error III. Unlike the majority, I find counsel's failure to object cannot be defended as trial strategy or tactics. However, I do agree with the majority no reasonable probability exists the outcome of the trial would have been different had such objections been raised and sustained.

_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Scott*, 2012-Ohio-3482.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| RANDY L. SCOTT | : | |
| | : | |
| | : | Case No. 11CA80 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with our Opinion. Costs assessed equally between appellant and appellee.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE