[Cite as *State v. Grubbs*, 2016-Ohio-5147.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 15CAA100080 |
| | : | |
| MICHAEL F. GRUBBS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Delaware County Court
                                                            of Common Pleas, Case No. 15 CR 1
                                                            01 0004

JUDGMENT:                                          AFFIRMED

DATE OF JUDGMENT ENTRY:              July 25, 2016

APPEARANCES:

For Plaintiff-Appellee:                              For Defendant-Appellant:

CAROL HAMILTON O'BRIEN                    WILLIAM T. CRAMER
DELAWARE CO. PROSECUTOR              470 Olde Worthington Road, Ste. 200
CORY J. GOE                                          Westerville, OH 43082
140 N. Sandusky St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Michael F. Grubbs appeals from the September 29, 2015 Judgment Entry of Prison Sentence of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} "Jane Doe" was 9 years old at the time of the crimes described herein and 10 years old at the time of trial. "Mary Doe" was 5 years old. The girls have a 4-year-old brother, "John Doe." The children's relatives other than appellant will be referred to as "Mother" and "Grandmother" to preserve the anonymity of the child victims. Appellant is Mother's uncle and Grandmother is the children's maternal great-grandmother.

{¶3} The three children were frequently left in the care of relatives while Mother worked. Appellant would watch all three children at Grandmother's house because he lived in a small apartment and Grandmother had more room to play. The children also had their own rooms and duplicate toys at Grandmother's house.

{¶4} Appellant was often the only adult with the children because Grandmother was at work during the day. Appellant would shuttle the children between school, preschool, and daycare as needed. Appellant would take the children to their favorite restaurants including Taco Bell and Burger King and sometimes bought toys for them. Appellant bought Jane Doe a Monster High doll she was particularly fond of.

{¶5} On Monday, December 29, 2014, the children were on Christmas break from school. Mother and Grandmother worked during the day so appellant watched all three children at Grandmother's house. Mother picked up Mary Doe and John Doe around 12:30, but appellant asked if he could keep Jane Doe for the afternoon so they

could spend time together before Jane Doe returned to school. Appellant returned Jane Doe to Mother's home around 5:30 p.m.

{¶6} The next day, Tuesday, December 30, 2014, appellant again volunteered to watch the children while Mother and Grandmother worked. This time, Mother picked up Jane Doe and John Doe around 12:30 p.m. and appellant asked to spend the afternoon alone with Mary Doe. Appellant brought Mary Doe home and dropped her off around 5:30 p.m. The family ate dinner and Mother's boyfriend, Robert Flores, came over. The girls were playing upstairs and Jane Doe came down to tell Mother "something bad was happening" and they needed to talk about it. Jane Doe said Mary Doe was afraid to tell.

{¶7} Mother found Mary Doe in her closet, crying and afraid. It took Mother twenty minutes to coax Mary Doe from the closet and to ask her what was wrong. Mary Doe was afraid she would be in trouble. Finally Mary Doe said, "Mommy, don't make us go with Uncle Michael anymore." She told her mother appellant had been kissing her on the lips and putting his hands down her pants, and she was afraid. At trial Mary Doe testified appellant touched her on her "private part" under her clothes and indicated her vagina. She said the last time it happened was the last time she saw appellant, i.e. December 30.

{¶8} Mother asked Jane Doe if this happened to her as well and Jane Doe said yes. At trial, Jane Doe testified appellant touched her "boobs," "pee-pee," and "butt," over her clothes and under her clothes. Jane Doe also testified to digital penetration. Jane Doe testified appellant told her not to tell anyone and bought her things if she allowed him

to touch her, including the Monster High doll.  When Jane Doe learned the same things were happening to Mary Doe, she felt it was time to disclose to their mother.

{¶9}   Mary Doe testified the abuse was ongoing until the night she and Jane Doe told their mother.  She and Jane Doe had never discussed the abuse with each other or with anyone else until the night of the disclosure.

{¶10} That night, Mother told her boyfriend and also her Aunt, appellant's sister. Aunt is a nurse and told Mother to take the girls to the hospital right away.  Mother took them to a hospital the next morning.

{¶11} In the meantime, Aunt, appellant, and their spouses went to Delaware County Children's Services and reported that the girls were being molested.[1]

{¶12} A pediatric SANE nurse examined both children at Nationwide Children's Hospital and collected rape kits.  The nurse testified both exams were "normal" and she did not observe any genital trauma to either victim.  She testified these findings were neither unusual nor unexpected in light of the allegations of touching and digital penetration.

{¶13} A forensic analyst from B.C.I. testified about examination of the rape kits for D.N.A. evidence.  No semen was found and no foreign D.N.A. was located on either victim.  The analyst noted a tiny amount of male D.N.A. was found on a swab taken from Jane Doe's breasts and a tiny amount of male D.N.A. was found on a swab of amylase found in Mary Doe's underwear.  The presence of the male chromosome was noted but the sample was too miniscule to provide any basis for comparison.

---

[1] The relatives named the perpetrator as Mother's boyfriend Robert Flores, an allegation which was alluded to at trial.

{¶14} A forensic interviewer from Nationwide Children's Hospital spoke to both girls and testified at trial.  She said Jane Doe reported sexual abuse by appellant at Grandmother's house: appellant touched her breasts more than once, rubbed his penis on her vagina with clothes on more than once, and put his finger inside her vagina.  Jane Doe said the last incident occurred the last time she saw appellant, or Monday, December 29, 2014.

{¶15} Mary Doe also disclosed sexual abuse by appellant to the forensic interviewer: appellant touched, rubbed, and hurt her vagina, on top of clothes and with bare skin, and put his finger inside her vagina.  It happened many times but the most recent occurrence was the last time she saw appellant, or Tuesday, December 30, 2014.

{¶16} Detective Daniel Madden of the Delaware City Police Department investigated the allegations which were reported to him via Grady Memorial Hospital.  Madden instructed Mother to take the girls to Nationwide Children's Hospital and she complied.  Madden advised Children's Services of the allegations and learned appellant and his family had come to Children's Services earlier the same day to report the abuse, although they named a different perpetrator.

{¶17} Madden called appellant and appellant volunteered to come in to speak to him.  Madden testified appellant said he played a "grandfatherly" role with the girls.  Madden asked why the girls would make up sexual abuse allegations and appellant said maybe someone else did it.  Madden noted appellant made a strange comment about telling "her" that if it was a boy and had a penis, it "leaked."  Madden observed appellant had a very dry mouth throughout the interview which the detective interpreted as an indication appellant was lying.  Appellant told Madden he and Aunt went to Children's

Services to start an investigation because his sister (Aunt) thinks something else was going on.

{¶18} When Madden asked directly if he ever touched the girls' breasts, vaginal areas, or buttocks, appellant denied the abuse and said if those touches happened they were unintentional in the bathtub or when the girls would jump on him. Madden also confronted appellant with the specific allegation that he kissed Mary Doe on the lips. Appellant said Mary Doe always kisses him on the lips; he said he has tried to stop her from doing it but she persisted.

{¶19} Madden testified he found it strange that although appellant has children of his own, the desktop photograph on his cell phone screen was of Jane and Mary Doe.

{¶20} Appellant testified on his own behalf at trial. He described many photos and videos of Jane, Mary, and John Doe on his cell phone; in some of the photos the girls are dressed up in costumes or makeup, and in some the children are sleeping. Appellant said the children did not ask to have their photos taken but did not object. In one video, he described Mary Doe "shaking [her] behind" and said it made him very uncomfortable and he had to correct the behavior. He said he observed this type of behavior "frequently."

{¶21} Several of appellant's friends and family members testified on his behalf at trial, including Aunt and Grandmother, among others. The witnesses testified they did not believe appellant had the propensity to molest children and described various developmental issues with the children and problems with Mother's parenting. The witnesses insinuated that the children's behavioral problems were consistent with sexual abuse but that Mother's boyfriend was the perpetrator instead of appellant.

{¶22} Appellant was charged by indictment as follows:  Count I, rape of a child under the age of 13 [Jane Doe], a felony of the first degree pursuant to R.C. 2907.02(A)(1)(b); Count II, forcible rape of Jane Doe pursuant to R.C. 2907.02(A)(2), a felony of the first degree; Count III, gross sexual imposition against a child under the age of 13 [Jane Doe], a felony of the third degree pursuant to R.C. 2907.05(A)(4); Count IV, forcible gross sexual imposition against Jane Doe, a felony of the fourth degree pursuant to R.C. 2907.05(A)(1); Count V, rape of a child under the age of 13 [Mary Doe], noting Mary Doe was under the age of 10, a felony of the first degree pursuant to R.C. 2907.02(A)(1)(b), a felony of the first degree; Count VI, forcible rape of Mary Doe pursuant to R.C. 2907.02(A)(2), a felony of the first degree; Count VII, gross sexual imposition against a child under the age of 13 [Mary Doe], a felony of the third degree pursuant to R.C. 2907.05(A)(4); and Count VIII, forcible gross sexual imposition against Mary Doe, a felony of the fourth degree pursuant to R.C. 2907.05(A)(1).

{¶23} The indictment states that Counts I through IV arose on or around December 29, 2014, and Counts V through VIII arose on or around December 30, 2014.

{¶24} Appellant entered pleas of not guilty.  He moved to sever trial of the counts relative to each of the two victims; appellee responded in opposition. The motion to sever proceeded to oral argument and was denied by judgment entry dated March 27, 2015.[2]

{¶25} On July 23, 2015, appellant moved the trial court to call Robert Flores, Mother's boyfriend, as a court's witness pursuant to Evid.R. 614.  Appellee filed a response in opposition.

---

[2] A number of other motions not relevant to this appeal were filed by both parties.

{¶26} On August 5, 2015, the trial court overruled appellant's motion to call Robert Flores as a court's witness, noting "[t]he defense has no good faith basis to believe Mr. Flores is involved in any way with molesting the girls except for the allegations coming forth after he entered their lives" and "[t]he Court does not feel it is necessary * * * to call Mr. Flores because there has been no showing he has any information material to the offenses."

{¶27} Appellee also filed a motion in limine asking the trial court to prohibit appellant from introducing evidence of Flores' rape conviction involving a victim described as an "adult ex-girlfriend."

{¶28} The case proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the conclusion of appellee's evidence and at the conclusion of all of the evidence; the motions were overruled. On August 31, 2015, appellant was found not guilty upon Counts I and II [rape of Jane Doe]; guilty upon Counts III and IV [gross sexual imposition against Jane Doe]; and guilty of Counts VII and VIII [gross sexual imposition against Mary Doe]. The jury was unable to reach a unanimous verdict upon Counts V and VI [rape of Mary Doe].

{¶29} On September 15, 2015, appellant filed a motion to set aside the verdicts and enter judgments of acquittal or in the alternative a motion for new trial. Appellee responded with a motion in opposition. On September 25, 2015, appellant filed a "Defendant's Proffer of Evidence" excluded at trial.

{¶30} Following a sentencing hearing, the trial court found Counts IV and VIII to be allied offenses of similar import and thus proceeded to sentence appellant upon

Counts III and VII. The trial court imposed two concurrent terms of 24 months in prison. Appellant was found to be a Tier II sex offender.

{¶31} On October 1, 2015, by judgment entry, the trial court sustained appellant's motion for acquittal as to Counts V and VI [rape of Mary Doe] but otherwise overruled the motion to set aside the verdict and motion for new trial.

{¶32} Appellant now appeals from the judgment entry of sentence and from the judgment entry denying the motion to set aside the verdict and for new trial.

{¶33} Appellant raises six assignments of error:

## ASSIGNMENTS OF ERROR

{¶34} "I. THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, AND CRIM.R. 14, BY REUSING TO SEVER THE COUNTS RELATING TO SEPARATE VICTIMS."

{¶35} "II. THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND TO PRESENT A COMPLETE DEFENSE BY EXCLUDING EVIDENCE OF ROBERT FLORES' PRIOR SEX OFFENSE."

{¶36} "III. THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND TO PRESENT A COMPLETE DEFENSE BY EXCLUDING EVIDENCE THAT ROBERT FLORES WAS ABUSING THE GIRLS."

{¶37} "IV. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION,

ARTICLE I, SECTION 10, BY COUNSEL'S FAILURE TO RENEW THE SEVERANCE ARGUMENT."

{¶38} "V.  APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, BY COUNSEL'S FAILURE TO TIMELY OFFER RELEVANT EVIDENCE."

{¶39} "VI.  APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS BY THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS IN THIS CASE."

**ANALYSIS**

I.

{¶40} In his first assignment of error, appellant asserts the trial court erred in failing to sever the counts pertaining to each of the two victims.  We disagree.

{¶41} We examined joinder and severance in the context of sexual assault allegations in *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, appeal not allowed*, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180, and a similar analysis is applicable here.  In both cases, defendants faced a single trial upon multiple sexual-assault-related charges against two victims.

{¶42} Joinder of offenses is governed by Crim. R. 8(A); offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial

resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. See, *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka,* 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist.1995).

{¶43} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel,* 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist.1988). Appellant argues the trial court erred in overruling his motion to sever. To prevail on such a claim, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the potential prejudice the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim,* 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), citing *State v. Hamblin,* 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476 (1988) and *Drew v. United States,* 331 F.2d 85 (D.C.Cir.1964). A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in separate trials, and (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. Id*.*

{¶44} If evidence of the offenses against Jane Doe is admissible at trial of the offenses against Mary Doe, and vice-versa, appellant has not demonstrated prejudice. "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that

might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, internal citation omitted. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed. *State v. Markwell,* 5th Dist. Muskingum No. CT2011–0056, 2012-Ohio-3096, 2012 WL 2613903, ¶ 46.

{¶45} The admission of other-acts evidence is limited because of the substantial danger a jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment, and this danger is especially high in a case "of an inflammatory nature" such as this one. *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, citing *State v. Curry,* 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). However, "[a]s long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of 'other acts' evidence if it is 'related to and share[s] common features with the crime in question.' " *State v. Markwell,* supra, 2012-Ohio-3096, 2012 WL 2613903, at ¶ 45, citing *State v. Lowe,* 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus.

{¶46} In this case, the other-acts evidence pertaining to each victim is related to and shares common features with the crimes committed against the other victim. Appellant has access to both victims because he babysits them; the victims are sisters and appellant is their great-uncle. Each victim was isolated by appellant and kept by him for an afternoon alone when the abuse occurred. The charged acts of abuse occurred within two days of each other, although ongoing continuous abuse was alleged.

{¶47} Appellee argues the evidence of each offense would have been admissible at separate trials pursuant to Evid.R. 404(B), which states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * * *." The Rule is in accord with R.C. 2945.59, which states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶48} In *State v. Curry,* 43 Ohio St.2d 66, 330 N.E.2d 720 (1975), the Ohio Supreme Court held "other acts" testimony, in order to be admissible under the scheme or plan exception, must: (1) illustrate the immediate background of the crime charged, such that without this testimony it would be virtually impossible to prove that the accused committed the crime; or (2) establish the identity of the perpetrator.  The Court has subsequently limited its holding in *Curry:* "Pursuant to Evid.R. 404(B), * * * evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan,

even if the identity of an accused or the immediate background of a crime is not at issue."

*State v. Williams,* 134 Ohio St.3d 521, 522, 2012-Ohio-5695, 983 N.E.2d 1278, 1280, ¶ 2 (2012).

{¶49} *Williams* gives us a framework within which to evaluate the other-acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.
>
> *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶50} In the instant case, the evidence pertaining to each offense does have the tendency to prove appellant engaged in a similar plan or method of conduct with both victims and to prove his motive, intent, or plan. The nature of the allegations is similar: touching over and under the clothing over time.  The final incidents occurred within 24 hours of each other, with each victim isolated by appellant and kept alone with him.

Appellant took each victim to a favorite restaurant consistent with allegations he groomed and rewarded the victims for acts of abuse.

{¶51} Having reviewed the substantial record of this case, we are convinced the evidence against both victims was not presented to prove appellant's character in order to show activity in conformity therewith.  Appellant told Madden he may have touched the girls accidentally in the bathtub or when they climbed on him to play; the similar circumstances of the offenses against both victims defeats this explanation and points to appellant's motive and intent.  Appellant and his witnesses implied the girls' behavioral problems were consistent with sexual abuse but pointed to a different perpetrator; the related allegations involving two victims point to appellant's identity as the perpetrator.

{¶52} From our review of the evidence, we find: 1) the acts were against family members, 2) the acts occurred when the children were isolated with appellant after he asked to be alone with them and 3) the allegations of touching over and under the clothing were similar. *State v. Markwell*, 5th Dist. Muskingum No. CT2011-0056, 2012-Ohio-3096, ¶ 48, citing *State v. Ickes,* 5th Dist. No.1999AP080052, 2000 WL 874728 (June 13, 2000). "These facts clearly indicate a 'scheme, plan or system' negating any claim of accident." Id. Further, the acts were consecutive in nature, and each victim testified separately. Id. The issues were clearly laid out for the jury, and the jury was instructed that each count and victim should be considered from its own evidence.  Id.

{¶53} The third step in the *Williams* analysis is whether the probative value of each incident is outweighed by the prejudice risked in its admission. *Williams,* supra, 2-2012-Ohio-5695 at ¶ 20.  Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-

6550, 820 N.E.2d 302 ¶ 24. Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. *Id.,* citing *State v. Robb,* 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000). In light of our conclusions above, we find the probative value of admitting the evidence in a single trial outweighs any prejudice to appellant.

{¶54} Consequently, evidence that appellant molested both sisters under similar circumstances was admissible in a single trial. *Williams,* supra, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 2; see also, *State v. Musgrave,* 5th Dist. Stark No. 97–CA–0135, 1998 WL 818067, *3 (Oct. 26, 1998); *State v. Markwell,* 5th Dist. Muskingum No. CT2011–0056, 2012-Ohio-3096, 2012 WL 2613903, supra; *State v. Brown,* 5th Dist. Delaware No. 2005CAA010002, 2005-Ohio-5639, 2005 WL 2727129.

{¶55} We find the trial court did not abuse its discretion in denying appellant's motion to sever.

{¶56} We further note evidence of each crime is simple and distinct. The jury was capable of separating the proof of multiple charges where, as here, the evidence of each crime is uncomplicated. *State v. Hamblin,* 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988). Each victim testified separately and the prosecution introduced evidence of each distinct crime.  The jury was evidently able to separate the evidence against each victim upon each count because appellant was found not guilty of the rape offenses against Jane Doe and was unable to reach a verdict upon the rape counts against Mary Doe.

{¶57} We conclude the trial court did not abuse its discretion in overruling the motion to sever. Appellant's first assignment of error is overruled.

II., III.

{¶58} Appellant's second and third assignments of error are related and will be considered together. Appellant argues the trial court erred in excluding evidence of Robert Flores' prior conviction and in excluding purported "evidence * * * Flores was abusing the girls." We disagree.

{¶59} The admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶60} Appellant argues the trial court erred in several ways with respect to rulings regarding Flores and his criminal history. We will address each in turn, but we begin by noting there is no evidence in this record Flores committed the offenses appellant was charged with. The evidence appellant points to consists of the testimony of his family members which premised upon rumor, supposition, and innuendo. The sole established fact against Flores is that he has a 2004 conviction for attempted rape against an adult female victim described by appellee as an ex-girlfriend.

{¶61} First, appellant argues the trial court should have called Flores as a court's witness "so that the defense could impeach Flores with his prior conviction for attempted rape and status as a registered sex offender." (Brief, 24). Ohio Evid. R. 614(A) states "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶62} At the hearing on appellant's motion, appellant presented evidence Flores was convicted of attempted rape in 2004 and is a registered sex offender. (Appellee stated at the hearing that the rape offense involved an adult ex-girlfriend and had no

connection at all with the instant case.)  Defense trial counsel stated he "assumed" Mother would have explained Flores' status as a sex offender to her children and told them to "mind [ ] themselves" around him.  (T. 8/4/2015, 6-7).  Counsel argued this assumption is relevant as follows:

> One of the questions the jury is likely to ask themselves is why would girls of this age have knowledge of these subjects but for the fact that they engaged in this behavior.
>
> This goes to a source of knowledge, your Honor.  That conversation would have provided them information about the importance of telling somebody if somebody—if you're being touched and what the consequences of that are.
>
> T. 8/4/2015, 7.

{¶63} The trial court questioned counsel whether the true purpose of calling Flores as a court's witness was to accuse him of being the perpetrator of the abuse against the girls and pointed out that calling Flores as a witness bore no relationship to the girls' "knowledge of sex abuse."  The following conversation took place:

> [DEFENSE COUNSEL:]  * * * *.
>
> We'll be able to essentially impeach his testimony extrinsically just through knowledge of other people, and that goes to his believability when I do ask him that ultimate question.
>
> Are you the person that did this and he says, no, if he's lied about six other things, Judge, the jury's going to have the opportunity to weigh that.

And I think that's an important factor for them to weigh when there's a man who's been sleeping in the same house, taking care of these girls for at least six weeks, and really longer than that, he's been a part of their lives for 11 months, he was their primary caregiver for six weeks.

With that much interaction with the girls immediately before these allegations, I think that's an important piece for the jury to know.

* * * *.

THE COURT: So do you have any good-faith basis to believe that he molested these girls or are you just putting him on the stand as a strawman out there?

[DEFENSE COUNSEL:] He's not a strawman, sir. But he has—he's—he is the change in the girls' lives. That's my good-faith basis is that almost immediately prior to these allegations coming out is when he's the person that starts babysitting them.

[Appellant] had been part of their life for two years, and then six weeks we have this happen.

I have other—I have other witnesses who will testify to change in their behavior during that six weeks.

Do I have any—do I have a video or a confession or statement that says he's the one that did this? No, sir.

But I have—I have quite a bit of other information that really raises some red flags, and I think those are red flags that the jury's entitled to hear and judge for themselves.

\* \* \* \*.

T. 8/4/2015, 16-18.

{¶64} The trial court deferred ruling upon the motion to call Flores as a court's witness but later denied the motion. The trial court also provisionally granted appellee's motion in limine prohibiting mention of the attempted rape conviction. (T. I., 19-21.)

{¶65} Flores' criminal conviction is not relevant and cross-examination of him in an attempt to paint him as the perpetrator of the crimes is not within the parameters of Evid.R. 614(A). "A trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 44 (2nd Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph four of the syllabus. "[L]imitations on the application of a rule like Evid.R. 614 reflect a concern that its cross-examination provision not swallow up the fundamental requirement imposed by Evid.R. 402 that in order to be admissible, evidence of a court's witness must be relevant; that is, the evidence must have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Id. at ¶ 47, citing Evid.R. 401.

{¶66} In this case, the trial court's decision to disallow Flores as a court's witness is not an abuse of discretion. The attenuated reason appellant cited for calling Flores as a witness (that Mother may have spoken to the girls about his past, thereby explaining

how the girls are aware of sexual abuse terms) has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Arnold*, supra, 2010-Ohio-5379 at ¶ 47. The trial court noted appellant's underlying purpose was to cast Flores as a "strawman" alternate suspect, and counsel could cite no reason supporting a good-faith belief that Flores was a credible alternate suspect. Appellant argues the defense theory was that the victims were afraid to go home to Mother's house because they were alone with Flores there and he abused them, "like Mother's previous boyfriends," but Mother would not believe them. Thus they made false allegations against appellant to gain Mother's "attention, sympathy, and protection." This theory is not supported by the evidence at trial.

{¶67} Appellant further argues he should have been permitted to introduce "evidence Flores was abusing the girls." In support of this unsubstantiated allegation, appellant points to his proffer of evidence at sentencing which consists of an affidavit of an adult trial witness stating she was sexually assaulted by Flores; an affidavit by Grandmother stating Jane Doe told her Flores spanked her and Mother lies; and an affidavit of Aunt stating she told D.J.F.S. she believed Flores "was the perpetrator because he is a convicted sex offender, another young lady had disclosed a sexual assault to me in which he was the perpetrator and the children's behavior around him appears frightened."

{¶68} This "evidence" does not support appellant's allegation Flores perpetrated the acts of abuse appellant was charged with committing, nor is such "evidence" admissible at appellant's trial. We note appellant cites no evidentiary basis upon which

the information contained in the affidavits would be admissible.  The trial court did not abuse its discretion in disallowing any of the cited "evidence" at trial.

{¶69} Appellant's second and third assignments of error are overruled.

IV., V.

{¶70} In his fourth and fifth assignments of error, appellant argues he received ineffective assistance of trial counsel.  We disagree.

{¶71} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶72} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶73} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶74} Appellant argues trial counsel was ineffective in failing to renew the argument to sever the counts at the close of all of the evidence. Appellant moved to sever prior to trial but did not renew the motion at the close of the appellee's case and at the conclusion of all evidence. Some Ohio courts have held a failure to renew a motion to sever constitutes a waiver. *State v. Musgrave*, 5th Dist. Stark No. 97-CA-0135, 1998 WL 818067, \*2 (Oct. 26, 1998). However, we generally prefer to address this claim on its merits as we have done here. Id. Appellant has thus failed to demonstrate that he was prejudiced by counsel's failure to renew the motion. See, *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶75} Appellant further argues trial counsel was ineffective in failing to raise the "evidence" described in the proffer earlier in the trial, particularly the claim that Flores allegedly sexually assaulted an adult. Appellant offers no explanation how this evidence would have been admissible during the adult witness' testimony. As we discussed supra, this "evidence" is not relevant or admissible. We thus fail to see how counsel could have approached introduction of the claims any differently.

{¶76} Appellant has not demonstrated ineffective assistance of trial counsel. Assignments of error numbers four and five are overruled.

VI.

{¶77} In his sixth assignment of error, appellant claims cumulative errors in his trial deprived him of a fair trial. We disagree.

{¶78} In *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), the Ohio Supreme Court held pursuant to the cumulative error doctrine "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the

constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."

{¶79} In the instant case, we do not find multiple instances of harmless error triggering the cumulative error doctrine, and appellant's sixth assignment of error is therefore overruled.  *State v. Scott*, 5th Dist. Richland No. 11CA80, 2012-Ohio-3482, ¶ 76.

## CONCLUSION

{¶80} Appellant's six assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Baldwin, J., concur.